UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Elizabeth Pearson Horner, ) | Civil Action No.: 9:17-cv-00894-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Elizabeth Pearson Horner ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Bristow Marchant, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends the Court affirm the Commissioner's decision. [ECF #23]. Plaintiff raises several objections to the Magistrate Judge's recommendation. [ECF #24]. Defendant responded to those objections. [ECF #26].

**Factual Findings and Procedural History**

The facts, including the medical timeline and evidence contained within the record, are adequately set forth by the Magistrate Judge in the Report and Recommendation. [ECF #23, pp. 3-11]. Briefly stated, Plaintiff was forty-two years old on the date of her alleged onset of disability, May 1, 2009. Plaintiff filed an application for disability insurance benefits and supplemental security income on September 5, 2013, alleging she suffers from fibromyalgia, chronic head pain, and post-traumatic

stress disorder. [ECF #10-2, p. 36].

In 2003, Plaintiff was involved in an automobile accident, and after that incident, began complaining of headaches. [Ex. 6F]. Thereafter, in May 2009, Plaintiff sought treatment for increased frequency and intensity of her headaches from Dr. William J. Taylor, Jr., who referred her to a neurologist. An MRI in December 2012 showed no acute intracranial abnormality. [Ex. 4F]. Plaintiff continued to complain of headaches and headache pain throughout 2013. Plaintiff went to the emergency room twice due to pain associated with headaches. [Ex. 4F]. Dr. Taylor saw Plaintiff again in 2013. He noted that her headache pain was a 4 out of 10, and that she was complaining of headaches two to three times per month. He further noted that she had not filled the prescription given to her at the hospital for her headache. [Ex. 5F]. An MRI a month later showed no evidence of any significant change since a previous MRI in 2002 and no evidence of recent infarction or discrete mass. A few weeks later, Plaintiff complained to Dr. Taylor of a persistent headache, but by the time she came to the appointment, she rated her intensity as a 4 out of 10. [Ex. 5F]. Plaintiff returned to Dr. Taylor over two years later on December 15, 2015 complaining of constant headaches and "migraines," which she rated as a 6 out of 10 on the pain scale. At that time, Dr. Taylor assessed Plaintiff as having occipital neuralgia on the right side, left shoulder pain, and dermatitis. Plaintiff requested that Dr. Taylor complete disability paperwork. On December 17, 2015, Dr. Taylor wrote a letter wherein he stated that Plaintiff was currently suffering from headaches lasting a few hours up to several days and occurring in frequency to three or four times per week. [Ex. 14F]. He further stated that these headaches affect her lifestyle. Dr. Taylor filled out a questionnaire indicating Plaintiff would be absent three or more days per month from work. [Ex. 14F].

In August and September 2013, Plaintiff sought treatment for a hernia and an upper respiratory

infection. She did not mention any significant headache concerns at that time. [Ex. 5F]. On November 12, 2013, Dr. Larry R. Korn performed a consultative examination on Plaintiff. He indicated that Plaintiff reported suffering constant pain in her right occipital area, and further, that she had stopped working as a cosmetologist due to hand dermatitis, though she was still able to drive and work seasonally at Wal-Mart. [Ex. 6F]. Dr. Korn's assessment was that Plaintiff was neurologically intact, and he diagnosed her with chronic post-traumatic occipital headaches accompanied by chronic myosis of uncertain etiology. [Ex. 6F]. Dr. Korn opined that there were no physical findings consistent with the need for permanent work restrictions or limitations. [Ex. 6F]. At a December 2013 appointment with psychologist Dr. James Ruffing, Plaintiff indicated that she had not attended outpatient mental health treatment. She further stated that she was working 4 to 9 hours a day, and 4 to 5 days a week seasonally at Wal-Mart. Plaintiff further indicated she could care for her personal needs and was involved in several activities of daily living. Dr. Ruffing also noted that it was not clear that Plaintiff had a mental impairment that would prevent or disable her from gainful employment. Dr. Ruffing saw no evidence of psychosis, and her thoughts were linear, logical and coherent. [Ex. 7F].

On February 4, 2014, at a post-colonoscopy follow up, Plaintiff complained of constant and sharp head pain, rated at a 5 out of 10. On February 27, 2014, Plaintiff underwent hernia surgery. [Ex. 10F]. At a neurology appointment in 2014, Dr. Jenna Brown discussed a Kenolog/Lidocaine injection with Plaintiff, to treat what was likely occipital neuralgia, but Plaintiff said she would consider it at another time. Dr. Brown instructed Plaintiff to start magnesium oxide tablets. [Ex. 11F]. In July of 2015, Plaintiff was treated at the emergency room for what was diagnosed as a non-epileptic seizure. [Ex. 15F]. Plaintiff again sought treatment at the emergency room on December 6, 2015 for a headache that she reported lasted for five days. [Ex. 15F]. Dr. Matthew Fox, a state agency physician opined that

3

Plaintiff could perform light work with certain noted restrictions. [Ex. 1A]. Dr. Joseph Geer, another state agency physician, also opined Plaintiff could perform a range of light work. [Ex. 8A].

The Social Security Administration denied Plaintiff's application initially and on reconsideration, so Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). [ECF #10-2, p. 36]. The ALJ held a hearing on January 13, 2016. [ECF #10-2, p. 36]. At the hearing, Plaintiff testified that she experiences stiffness and pain in her neck, and that as a result of her headache symptoms she has difficulty with several physical movements, as well as difficulty completing tasks and following instructions. [ECF #10-2, p. 43]. The ALJ also considered a statement submitted by Plaintiff's husband, as well, indicating she had functional limitations. [ECF #10-2, p. 47].

The ALJ denied Plaintiff's claim on March 2, 2016, finding that Plaintiff was not under a disability as defined in the Social Security Act, as amended. [ECF #10-2, p. 50]. In the decision, the ALJ determined that, although Plaintiff suffers from "severe" impairments of cervical degenerative disc disease, headaches, and polyalthralgias, she still retained the residual functional capacity to perform light work, with certain specified limitations. Specifically, the ALJ's findings were as follows:

> (1) The claimant meets the insured status requirements of the Social Security Act through September 30, 2009.
>
> (2) The claimant has not engaged in substantial gainful activity since May 1, 2009, the alleged onset date. (20 CFR 404.1571 *et seq.*, 416.971 *et seq.*).
>
> (3) The claimant has the following severe impairments: Cervical Degenerative Disc Disease; Headaches; Polyarthralgias (20 CFR 404.1520(c) and 20 CFR 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that the claimant: Can never climb ladders, ropes or scaffolds; Can occasionally crouch and crawl; Can frequently climb ramps and stairs, balance, stoop, and kneel; Could occasionally be exposed to loud or very loud noise and strong olfactory irritants; Could never be exposed to hazards associated with unprotected dangerous machinery or unprotected heights; Can never operate commercial vehicles at night; Would be able to understand, remember, and carry out simple, routine tasks in a low stress work environment, defined as one free of fast-paced or team-dependent production requirements, involving simple work-related decisions, occasional independent judgment skills and occasional workplace changes; Will be off-task up to five percent of the workday beyond normal breaks, an example of which would equate to an average of no more than six minutes off-task within a two-hour work segment.

(6) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7) The claimant was born on December 31, 1966 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged onset disability date (20 CFR 404.1563 and 416.963).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1529, 404.1569(a), 416.969 and 416.969(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[ECF #10-2, pp. 38-50].

Plaintiff requested a review of the ALJ's decision. The Appeals Council denied Plaintiff's request to review the ALJ's decision, making the decision of the ALJ the final decision of the Commissioner. [ECF #10-2, p. 2]. In making that decision, the Appeals Council indicated that it considered newly submitted evidence, as well as the reasons Plaintiff disagreed with the ALJ's decision. [ECF #10-2, p. 3]. On August 5, 2015, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #17; ECF #20; ECF #21], and the Magistrate Judge issued his Report and Recommendation on June 8, 2018, recommending that the Commissioner's decision be affirmed. [ECF #23, p. 32]. The Magistrate Judge recommends affirming the Commissioner's decision because the record contains substantial evidence to support the decision that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. [ECF #23, p.32]. Plaintiff filed objections on June 20, 2018. [ECF #24]. Defendant replied to these objections on November 3, 2016. [ECF # 25].

**Standard of Review**

**I.   Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58

6

(4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II. The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for

7

clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

**Applicable Law**

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.\* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that her impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment

8

of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing past relevant work;[2] and (5) whether the impairment prevents her from doing substantial gainful activity. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish her impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

A claimant is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## Analysis

### I. Review of the RFC

Plaintiff objects to the R&R's reliance upon *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009), in discussing the expression of Plaintiff's RFC within the ALJ's decision. Plaintiff argues that the law as stated in *Knox* is an inaccurate assessment of the law of the Fourth Circuit. Plaintiff argues that, to the extent the R&R relies upon *Knox* in assessing the ALJ's RFC determination, the analysis should be rejected.

As stated in the Social Security Regulations, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related

activities." SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996). Further, an RFC assessment must include a discussion describing how the evidence supports each conclusion. SSR 96-8p, 1996 WL 374184, at *7. As Plaintiff correctly explains, in *Mascio v. Colvin*, the claimant objected to the ALJ's failure to conduct a function-by-function analysis of the claimant, as well as the use of a legally insufficient hypothesis to the vocational expert. *Id.* at 635-38. *Mascio* provided that, depending upon the circumstances of each case, remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review. *Id.* at 636. However, the Fourth Circuit has also not adopted a rule requiring per se reversal for claims where an RFC is expressed before analyzing the claimant's limitations function by function. *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016) (citing *Mascio*, 780 F.3d at 636).

Here, the Magistrate Judge considered whether Plaintiff's argument in her reply brief regarding alleged errors in expressing the RFC necessitated remand. In so doing, the Magistrate Judge explained that the ALJ provided a narrative discussion of the medical and nonmedical evidence supporting the RFC. The Magistrate Judge cited to *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009), as additional support, with a parenthetical explanation stating that a function-by-function analysis is not required. Nonetheless, the Magistrate Judge further explained that the ALJ discussed Plaintiff's impairments in detail, including providing a discussion of the exertional and postural impairments. Moreover, the RFC is specific with respect to the limitations, both physical and mental that restrict the Plaintiff's work performance. It does not appear that the Magistrate Judge relied upon this case to find that the ALJ conducted an improper analysis. Accordingly, this Court finds that the ALJ's analysis indeed comports with 96-8p, and the ALJ did perform the requisite analysis. Accordingly, this Court

need not reject the analysis of the ALJ's RFC as it complies with the mandates of the law of the Fourth Circuit. Accordingly, this objection is overruled.

**II. ALJ's Analysis of the Frequency of Headaches**

Plaintiff further objects to the R&R's recommendation to affirm the ALJ's decision because she states that the ALJ never made any findings concerning the frequency of Plaintiff's headaches. After a review of the decision, it is clear that the ALJ explained in great detail the medical evidence which supports Plaintiff's allegations regarding her headaches. The ALJ acknowledged that Plaintiff's records reveal she sought treatment for headaches for many years. The ALJ discusses Plaintiff's personally-created calendar, which reflects notes that she was experiencing headaches three to four times a week, with fewer headaches in some weeks and more in other weeks. The ALJ notes that other records suggest that in 2013, she was experiencing headaches two to three times per month. [ECF #10-2, pp. 43-44]. Moreover, the ALJ explains that Plaintiff's allegations were inconsistent with her work history in that she continued to work despite these weekly headaches, and that she was treating her headaches without continuing to present to the emergency room. Thus, despite Plaintiff's arguments to the contrary, it is clear that the ALJ reviewed Plaintiff's medical record, as well as her own self-reported information, to discuss the varying frequency of headache encounters that Plaintiff experienced during the relevant time period. Accordingly, this objection is overruled.

To the extent Plaintiff raised an additional objection in the first footnote in her brief regarding whether the ALJ properly considered her headaches in conjunction with the extent she can perform activities, this Court has considered this argument, as well. Plaintiff argues that the ALJ's reliance upon Plaintiff's daily activities is in error because the ALJ did not also consider the extent to which she can perform her daily activities. *See generally Woods v. Berryhill*, 868 F.3d 686, 694-95 (4th Cir. 2018).

Specifically, Plaintiff argues that she could only perform daily activities when not experiencing a headache. This Court disagrees that the ALJ committed such an error. First, the ALJ specifically considered a calendar created by Plaintiff documenting the extent she was experiencing headaches. She testified that she noted on the calendars days where she might have head pain but could still "function" and perform activities such as cooking dinner. [ECF #10-2, p. 85]. At the hearing, the ALJ discussed this information in detail with Plaintiff regarding what activities she could perform during days where she had head pain versus days she felt she was having a migraine. Moreover, the ALJ considered Plaintiff's testimony that she was unable to continue her cosmetology employment due to dermatitis, not due to her headaches. Moreover, Plaintiff's testimony regarding many of her physical limitations were related to her shoulder and right hand pain. Plaintiff testified that the migraines prevented her from working at night because she cannot see to drive home in the dark. The ALJ specifically accounted for that in the RFC determination. The ALJ indicated that Plaintiff explained her headaches were worse with heavy lifting and certain smells, which the ALJ also accounted for in the RFC. The ALJ further discussed Plaintiff's testimony that she is unable to function when she has a "breakthrough headache," and that headaches prevented her from continuing her most recent employment. The ALJ therefore included further mental limitations within the RFC. While the ALJ explained that some of Plaintiff's allegations regarding the extent to which the headaches impair her ability to work were not supported by the medical evidence, the ALJ did adequately consider both the type of activities she can perform, as well as the extent to which she can perform those activities. Accordingly, this Court's review of the ALJ's decision and RFC reveal that the extent to which she can perform activities was addressed, particularly with respect to what activities she could perform when she had a debilitating headache.

### III. ALJ's RFC Analysis and Woods v. Berryhill

Plaintiff further objects to the ALJ's RFC analysis because she alleges it does not comport with the analysis required in *Woods v. Berryhill*, 868 F.3d 686, 694-95 (4th Cir. 2018). Plaintiff points to several findings by the ALJ to support her contention that the ALJ did not explain how, based on the evidence, Plaintiff could perform the tasks as outlined in the RFC. This Court agrees with the Magistrate Judge that the ALJ specifically considered and included Plaintiff's complaints in limiting the RFC, including citing to specific evidence in the record to support the RFC.

Plaintiff states that the ALJ never explained why he decided to include within the RFC a limitation that Plaintiff would be "off task" up to five percent of the workday beyond normal breaks. Plaintiff argues it is "impossible" to discern the basis of this limitation. To the contrary, the ALJ explained that, based upon the claimant's allegations concerning her headache pain and its effects on her cognitive functioning, the ALJ was including mental limitations. The ALJ then specifically cited to activities Plaintiff is able to perform, as well as the consultative psychological examination to find this specific limitation as it relates to her headaches.

Plaintiff further states that the ALJ did not explain how "frequent or severe" Plaintiff's headaches were, nor how that would translate into "time off task" or absences within the RFC. Again, this Court concludes that the ALJ properly considered varying evidence regarding the frequency and severity of Plaintiff's headaches, as well as sufficiently explained how certain evidence contradicted some of Plaintiff's allegations regarding the frequency of her headaches. The ALJ explained that he specifically reviewed and considered Plaintiff's own calendar which provided the frequency of her headaches (by noting which days she experienced pain), as well as the severity of her headaches (which

14

she marked as either pink or blue to differentiate whether she could or could not function). [ECF #10-2, p. 85]. The ALJ noted that the calendar (i.e. Plaintiff's testimony) reflects a frequency of three to four headaches a week. [ECF #10-2, p. 43]. The ALJ then explains that evidence suggests that Plaintiff's headaches are not as severe or as limiting as alleged. The ALJ specifically points to several places within the record that do not support this allegation of severity including: (1) medical notes indicate Plaintiff was not interested in receiving an injection for head pain; (2) the medical notes from Plaintiff's ER visits reveal that she had not attempted to alleviate any alleged pain with medication prior to coming to the ER; (3) during one ER visit, Plaintiff stated that she allowed five days to pass before attempting to try any medication or visit the ER; and (4) Plaintiff generally testified that she sometimes treats her headaches at home, suggesting her medications are effective. Specifically, with respect to the calendar, the ALJ stated that the record reflects that the claimant reported she had been experiencing only 2-3 headaches per month when she reported it to her doctors back in 2013. The ALJ thus clearly stated why he did not find that Plaintiff suffered from headaches on a weekly basis, such that it would require any additional RFC limitations.

Finally, Plaintiff argues the ALJ should have resolved an alleged conflict in the record with respect to how many days per week Plaintiff suffers from a headache. Plaintiff also appears to argue that the ALJ was required determine how many days a week Plaintiff actually suffered from headaches. *Woods* does not mandate such a result. First, the frequency of headaches noted by the ALJ was from a different time period (2013 from 2015), therefore the two allegations are not necessarily in conflict, though the ALJ did explain that the increase in frequency was not otherwise supported by the medical records. Nonetheless, the ALJ explained that the evidence of less frequent headaches, *coupled with* several other evidence and medical records, suggests that Plaintiff did not suffer from such debilitating

15

headaches, not otherwise controlled, that would translate into additional limitations within the RFC, such as days absent from work. As discussed in Commissioner's reply brief, the ALJ adequately supported his findings that further limitations were not warranted within the RFC. *Woods* reiterates the fact that the ALJ must explain how based on the evidence, Plaintiff could perform the requisite RFC and building a "logical bridge" from the evidence to the RFC determination. This Court finds that the ALJ adequately explained the RFC in accordance with *Woods*, and substantial evidence supports his findings. Accordingly, this objection is overruled.

**IV. Post Hoc Rationalization**

Finally, Plaintiff objects to the recommendation of the Magistrate Judge because she argues that the Magistrate Judge engaged in an impermissible *post hoc* explanation of the basis for the RFC recommendation. Specifically, the Plaintiff takes issue with the following excerpt in the R&R: "based on [the ALJ's] determination that Plaintiff's allegations concerning her headache pain and its effect on her cognitive functioning were partially credible," the ALJ found that Plaintiff would be off task up to five percent of the workday. [ECF #24, p. 6]. It is Plaintiff's contention that the statement is incorrect and a *post hoc* weighing of the evidence. Specifically, Plaintiff argues that the ALJ never cited this as a basis for her decision.

This Court is required to review the ALJ's decision based on the reasoning and factual findings set forth by the ALJ's in his decision, rather than engage in *post hoc* rationalization that attempts to determine what the ALJ was thinking when rendering his decision. *Bray v. Commissioner*, 554 F.3d 1219, 1225 (9th Cir. 2009). This Court has reviewed the ALJ's decision and disagrees with Plaintiff's contention. Within the ALJ's decision, he provides, "[t]he mental work limitations are based upon the claimant's allegations concerning her headache pain and its effects on her cognitive functioning." [ECF

16

#10-2, p. 47]. The ALJ further explains, "as noted above, the claimant's daily activities, which include a number of activities demanding substantial focus and persistence. . . and the consultative psychological examiner noted no apparent cognitive deficits on examination of the claimant" and "the claimant acknowledged that she remains able to perform simple and routine tasks." [ECF #10-2, p. 48]. Accordingly, the ALJ found that, "the claimant would be off task up to five percent of the workday beyond normal breaks." [ECF #10-2, p. 48]. It is therefore clear to this Court that the Magistrate Judge accurately concluded that the ALJ based this conclusion on Plaintiff's allegations concerning headache pain and its effect on cognitive functioning, which the ALJ expressly noted was partially credible. Moreover, this analysis by the ALJ was included within one paragraph in discussing Plaintiff's mental limitations. Accordingly, this Court does not find that the Magistrate Judge engaged in any *post hoc* rationalization, and this objection is overruled.

## Conclusion

The Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's response to Plaintiff's objections, and the applicable law. For the foregoing reasons, the Court adopts the recommendation of the Magistrate Judge. [ECF #23]. The decision of the Commissioner is affirmed.

**IT IS SO ORDERED.**

Florence, South Carolina  
September 4, 2018

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge